No. 21-13202-J

_____

# IN THE UNITED STATES COURT OF
# APPEALS FOR THE ELEVENTH CIRCUIT

_____

SARA DANESHPAJOUH,

*Plaintiff-Appellant*,

v.

SAGE DENTAL GROUP OF FLORIDA, PLLC, a Florida
corporation, SAGE DENTAL MANAGEMENT, LLC, a Florida
corporation, and SAGE DENTAL OF POMPANO BEACH, P.A.,
a Florida corporation,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of Florida

No. 19-CIV-62700-RAR

_____

## APPELLANT'S OPENING BRIEF

_____

DARREN M. GOLDMAN, ESQ.         JAMIE B. DOKOVNA, ESQ.
FLORIDA BAR NUMBER 88638        FLORIDA BAR NUMBER 592722
BECKER & POLIAKOFF, P.A.        BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD., STE. 1800 625 N. FLAGLER DRIVE, 7TH FLOOR
FORT LAUDERDALE, FL 33301       WEST PALM BEACH, FL 33401
PHONE:  (954) 364-6037          PHONE:  (561) 655-5444
FAX:     (954) 985-4176         FAX:     (561) 832-8987

*Attorneys for Appellant*
*Sara Daneshpajouh*

**No. 21-13202-J**
**Sara Daneshpajouh v. Sage Dental Group of Florida, PLLC *et al.***

## CERTIFICATE OF INTERESTED PERSONS

Appellant Sara Daneshpajouh, pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1-1, discloses the following as a complete list of all persons and entities known to the appellant to have an interest in the outcome of this appeal:

Antkowiak, Christian (counsel for Appellees)

Beazley USA Services, Inc. (Appellees' insurer)

Becker & Poliakoff, P.A. (counsel for Appellant)

Buchanan Ingersoll & Rooney PC (counsel for Appellees)

Daneshpajouh, Sara (Appellant)

Dokovna, Jamie B. (counsel for Appellant)

Farinas-Sabogal, Lilliana M. (counsel for Appellant)

GD Dental Services, LLC (Parent Company of Appellee Sage Dental Management, LLC)

Goldman, Darren M. (counsel for Appellant)

McLaughlin, Erin J. (counsel for Appellees)

Roark, Cindy (Sole Manager of Appellee Sage Dental Group Of Florida, PLLC)

Ruiz II, The Honorable Rodolfo A. (Southern District of Florida judge)

**No. 21-13202-J**
**Sara Daneshpajouh v. Sage Dental Group of Florida, PLLC *et al.***

Sage Dental Group of Florida, PLLC (Appellee)

Sage Dental Management, LLC (Appellee)

Sage Dental of Pompano Beach, P.A. (Appellee)

Syndicate 2623/623 at Lloyd's of London (Underwriters of Appellees' Insurance Policy)

TBG NMS Holdings, Inc. (Parent Corporation of Appellee Sage Dental Management, LLC)

Villeneuve, Stephen Carey (counsel for Appellees)

Any other persons or entities on Appellees' Certificate of Interested Persons

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant believes that the Court may resolve the issues submitted in the appeal based on the record and the briefs, but also believes oral argument may be helpful to the Court in evaluating the legal and factual issues presented.

TABLE OF CONTENTS

Certificate of Interested Persons ............................................................C-1

Statement Regarding Oral Argument ..........................................................i

Table of Contents ..................................................................................... ii

Table of Citations.................................................................................... iii

Statement of Jurisdiction...........................................................................v

Statement of the Issues..............................................................................1

Statement of the Case................................................................................3

Summary of the Argument.......................................................................15

Argument..................................................................................................19

   I.    The District Court Erred in Granting Sage Dental Summary Judgment
       on Dr. Daneshpajouh's Pregnancy Discrimination Claims.......................19

   II.   The District Court Erred in Granting Sage Dental Summary Judgment
       on Dr. Daneshpajouh's Pregnancy Retaliation Claims. ...........................26

      A.    Dr. Daneshpajouh Established a *Prima Facie* Case of
          Retaliation. ...................................................................27

      B.    Dr. Daneshpajouh Presented Sufficient Evidence of Pretext. .........30

   III.  The District Court Erred in Granting Sage Dental Summary Judgment
       on Dr. Daneshpajouh's FMLA Retaliation Claim. ...................................32

   IV.  The District Court Erred in Granting Sage Dental Summary Judgment
       on Dr. Daneshpajouh's FWA Claim. .........................................................35

Conclusion ...............................................................................................36

Certificate of Compliance with Type-Volume Limit, Typeface
Requirements, and Type-Style Requirements ..........................................38

Certificate of Service ...............................................................................39

TABLE OF CITATIONS

## Cases

*Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253 (11th Cir. 2010).. 22, 28, 30

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..............................13

*Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354 (D.C. Cir. 2013)......................14

*Berber v. Wells Fargo, NA.*, 798 F. App'x 476 (11th Cir. 2020) ...........................35

*Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791 (11th Cir. 2000)..............33

*Chapman v. AI Transp.*, 229 F.3d 1012 (11th Cir. 2000).......................................22

*Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) .........................................30

*Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346 (11th Cir. 1999)...........................28

*Drago v. Jenne*, 453 F.3d 1301 (11th Cir. 2006)............................................. 28, 29

*Equal Employment Opportunity Comm'n v. Reichhold Chems., Inc.*,
    988 F.2d 1564 (11th Cir. 1993) ..................................................................... 28, 30

*Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322 (11th Cir. 1999) ...... 21, 27, 28

*Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121 (11th Cir.
    2020) ....................................................................................................................32

*Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913 (11th Cir. 1993) ........... 23, 24

*Hayden v. First Nat'l Bank of Mt. Pleasant*, 595 F.2d 994 (5th Cir. 1979)...........14

*Holland v. Gee*, 677 F.3d 1047 (11th Cir. 2012)....................................................19

*Huddleston v. Bowling Green Inn of Pensacola, LLC*, No. 3:19-cv-1545,
    2020 WL 7296511 (N.D. Fla. Nov. 10, 2020)....................................................24

*Hulbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286 (11th
    Cir. 2006) ............................................................................................................34

*Johnson v. Airbus Def. & Space Inc.*, 858 F. App'x 304 (11th Cir. 2011) .............20

*Key v. Central Georgia Kidney Specialists, P.C.*, No. 19-00253, 2020
    WL 7053293 (M.D. Ga. Oct. 28. 2020)................................................... 24, 25, 28

*Lewis v. City of Union City, Georgia*, 934 F.3d 1169 (11th Cir. 2019) 19, 20, 21, 26

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) 17, 19, 26, 30, 32, 33, 35

*Mohammed v. Jacksonville Hospitalists, P.A.*, 712 F. App'x 872 (11th
    Cir. 2017) ....................................................................................................24

*Pecora v. ADP, LLC*, 232 F. Supp. 3d 1213 (M.D. Fla. 2017) ...............................34

*\*Ross v. Rhodes Furniture, Inc.* 146 F.3d 1286 (11th Cir. 1998) ..........................20

*Saffold v. Special Counsel, Inc.*, 147 F. App'x 949 (11th Cir. 2005)......................30

*Salem v. City of Port St. Lucie*, 788 F. App'x 692 (11th Cir. 2019) .......................34

*Scott v. Harris*, 550 U.S. 372 (2007) .......................................................................14

*Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011) .........................20

*Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199
    (11th Cir. 2001)............................................................................. 13, 14, 32

*Tebo v. City of DeBary, Florida*, 784 F. App'x 727 (11th Cir. 2019)............. 26, 28

*\*Thomas v. Cooper Lightning, Inc.*, 506 F.3d 1361 (11th Cir. 2007).....................28

**Statutes**

Fla. Stat. § 448.102 .................................................................................... 12, 35

Fla. Stat. Ch. 760...........................................................................................12

**Other Authorities**

29 U.S.C. § 2601.............................................................................................12

42 U.S.C. § 2000e ................................................................................ 12, 19, 26, 27

**Rules**

Fed. R. Civ. P. 56(a)........................................................................................13

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for Appellant's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (as amended), and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, because they arise under the laws of the United States. The District Court had supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for the related discrimination and retaliation claims alleged pursuant to analogous Florida law.[1] This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because the District Court disposed of all the Appellant's claims when it granted Appellees' motion for summary judgment [ECF No. 114[2]] and entered final judgment in Appellees' favor [ECF No. 115]. The appeal is timely because Appellant filed her notice of appeal within 30 days of the District Court's entry of final judgment. [ECF No. 116.]

---

[1] The Florida Civil Rights Act, Fla. Stat. Ch. 760 and the Florida Whistle-Blower's Act, Fla. Stat. § 448.102.

[2] References to "ECF No." are to the District Court's electronic filing and docketing system for case number 19-cv-62700-RAR. ECF No. 114, for example, refers to document number 114 on the District Court docket. Where certain pages are cited, those refer to the stamped page number in the upper right-hand corner of the page made by the District Court's electronic filing system, and not to any page numbering in the document itself.

## STATEMENT OF THE ISSUES

1.      Did the District Court err when it granted Sage Dental's motion for summary judgment on Dr. Daneshpajouh's claims under Title VII of the Civil Rights Act of 1962 (as amended by the Pregnancy Discrimination Act) ("Title VII") and the Florida Civil Rights Act of 1992 (the "FCRA") for pregnancy discrimination by failing to consider record evidence of events that occurred after Sage Dental explicitly made the decision not to terminate Dr. Daneshpajouh on October 18, 2017, and before the time it ultimately fired her on November 9, 2017.

2.      Did the District Court err when it granted Sage Dental's motion for summary judgment on Dr. Daneshpajouh's Title VII and FCRA retaliation claims by failing to consider record evidence of events that occurred after Sage Dental explicitly made the decision not to terminate Dr. Daneshpajouh on October 18, 2017, and before the time it ultimately fired her on November 9, 2017.

3.      Did the District Court err when it granted Sage Dental's motion for summary judgment on Dr. Daneshpajouh's Family and Medical Leave Act retaliation claim by failing to consider record evidence of events that occurred after Sage Dental explicitly made the decision not to terminate Dr. Daneshpajouh on October 18, 2017, and before the time it ultimately fired her on November 9, 2017.

1

4.      Did the District Court err when it granted Sage Dental's motion for summary judgment on Dr. Daneshpajouh's Florida Whistle-Blower's Act retaliation claim by failing to consider record evidence of events that occurred after Sage Dental explicitly made the decision not to terminate Dr. Daneshpajouh on October 18, 2017, and before the time it ultimately fired her on November 9, 2017.

**STATEMENT OF THE CASE**

This case arises from Sage Dental's[3] decision to fire Dr. Daneshpajouh for illegal and improper reasons. Sage Dental initially decided to terminate Dr. Daneshpajouh's employment on October 17, 2017, based on performance-related rationales,[4] but ultimately reversed that decision and decided not to fire her. Instead, Sage Dental decided to transfer Dr. Daneshpajouh to a different office, which amounted to a demotion. Following this decision, however, Dr. Daneshpajouh engaged in various protected activity. Twenty-three days later – and two days after complaining to her superiors – Sage Dental abruptly reversed course and terminated Dr. Daneshpajouh's employment for good. It allegedly based this decision on a rationale similar to its initial, rescinded October decision. This appeal turns on whether what happened during those twenty-three days should be considered in evaluating Dr. Daneshpajouh's discrimination and retaliation claims.

---

[3] The District Court collectively referred to Appellees Sage Dental Group of Florida, PLLC, Sage Dental Management, LLC, and Sage Dental of Pompano Beach, P.A. as "Sage Dental" and analyzed the three Appellees together as a single entity. Dr. Daneshpajouh continues that convention here.

[4] Dr. Daneshpajouh disagrees with Sage Dental's evaluation of her and the reasons for her termination as alleged by Sage Dental but recognizes that its view of her performance is all that matters. Indeed, any explanation Dr. Daneshpajouh may have for her termination – good or bad – is irrelevant.

**<u>Sage Dental's Initial Decision to Fire Dr. Daneshpajouh</u>.**

In December 2012, Dr. Daneshpajouh began working at Sage Dental's[5] Pompano Beach office where she was the "main dentist." [ECF No. 58-1 at 27 (Transcript 100:19-22); ECF No. 58-5 at 5 (Transcript 16:6-7); ECF No. 64-1 at 2 ¶ 3.] No later than October 17, 2017,[6] Sage Dental decided to terminate Dr. Daneshpajouh's employment. [ECF No. 58-6 at 3 ¶¶ 14-15; *id.* at 9, 12-13.]

The decision to fire Dr. Daneshpajouh in October 2017 allegedly stemmed from a combination of interpersonal conflicts and poor performance metrics. [ECF No. 58-6 at 3 ¶¶ 8-10; ECF No. 58-7 at 18-19 (Transcript 65:13-71:22).] Though the record contains anecdotal testimony regarding Dr. Daneshpajouh's interpersonal issues, the only documented issues occurred in 2014 and 2015, when Dr. Daneshpajouh's supervisor at the time, Dr. Antonio Cruz, counseled Dr. Daneshpajouh about her interactions with staff and patients. [ECF No. 58-7 at 18-19 (Transcript 65:13-71:22); ECF No. 58-9; ECF No. 8-10.]

---

[5] When she was hired, Sage Dental was named Gentle Dental of Pompano Beach, P.A. [ECF No. 58-1 at 10 (Transcript 32:9-13).] The name changed to Sage Dental of Pompano Beach, P.A. in 2013. [*Id.*]

[6] On October 3, 2017, Sage Dental discussed interviewing "younger doctors" and making the recruitment of a new, and hopefully younger, dentist "a priority." [ECF No. 58-6 at 6-7.] The District Court held that this only showed that Sage Dental was contemplating replacing Dr. Daneshpajouh, not that it had decided to follow-through with Dr. Daneshpajouh's termination. [ECF No. 114 at 8.] For purposes of this appeal, it makes no difference whether the initial decision to terminate Dr. Daneshpajouh's employment was made on October 3, 2017, or October 17, 2017.

As for Dr. Daneshpajouh's performance, Sage Dental stated it fired Dr. Daneshpajouh because her burn rate[7] was the second worst, her patient retention rate[8] was the worst, and her treatment acceptance rate[9] was the worst among dentists in her region, *i.e.*, those reporting to Dr. Miguel Montilla – a Senior Dental Director at Sage Dental and, as of early 2017, Dr. Daneshpajouh's direct supervisor. [ECF No. 58-6 at 2-3 ¶¶ 6-7; ECF No. 58-11 at 5-7.]

In making this decision, though, Sage Dental ignored other metrics. For example, in terms of the actual patients lost, Dr. Daneshpajouh performed better than eight of the eleven other Sage Dental dentists working under Dr. Montilla. [ECF No. 58-11 at 5-7.] Indeed, Dr. Daneshpajouh was one of the most productive dentists at Sage Dental. [*See generally* ECF No. 101-1 (Composite Exhibit A), filed under seal pursuant to ECF No. 99.] In 2016, she saw more patients than all but one other dentist and produced more business for Sage Dental than all other dentists supervised by Dr. Montilla [ECF No. 101-1 at 2]; in 2017, her total charges to patients were more than all but one other dentist. [*Id.* at 3.] To that end, Dr. Daneshpajouh generated more revenue for Sage Dental than all eleven other

[7] The "burn rate" is the percentage of patients who did not return to Sage Dental after their first visit. [ECF No. 58-11 at 2, 5.]

[8] The "retention rate" is the percentage of overall patients who returned to Sage Dental. [ECF No. 58-11 at 5-6.]

[9] The "treatment acceptance rate" is the percentage of treatment presented to the patient that the patient accepted. [ECF No. 58-11 at 6-7.]

dentists. [*Id.* at 2-3.]

Nevertheless, Sage Dental's plan was to fire Dr. Daneshpajouh on October 18, 2017, and hire Dr. Lisa Ma as Dr. Daneshpajouh's replacement.[10] [ECF No. 58-6 at 3 ¶¶ 13-14; *id.* at 9.]

### Sage Dental's Decision to Reverse Its Initial Termination Decision and Continue Employing Dr. Daneshpajouh.

On October 18, 2017, Dr. Montilla met with Dr. Daneshpajouh to present her a signed termination letter and officially fire her from Sage Dental. [ECF No. 58-6 at 3 ¶¶ 14-15.] Before he did, Dr. Daneshpajouh informed him that she was pregnant. [*Id.* at 3 ¶ 16.] Given this new information, Dr. Montilla did not terminate Dr. Daneshpajouh. [*Id.* at 4 ¶ 17.] Nor did he raise the performance and interpersonal issues that had allegedly led to the decision to fire her. [*Id.* at 3-4 ¶¶ 16-17; ECF No. 64-1 at 6 ¶¶ 38, 43.]

Instead, after learning Dr. Daneshpajouh was pregnant, Dr. Montilla spoke with his superiors, Sage Dental's CEO, Joseph Garcia, its Senior Vice President of Finance, Kirk Sayler, its Human Resources director, Maddi Kantor, and its Regional Manager and Regional Associate Vice President of Operations, Puneet Mann, regarding Dr. Daneshpajouh. [*Id.* at 4 ¶ 18.] Dr. Montilla recommended that Sage Dental not fire Dr. Daneshpajouh, and in lieu of termination, transfer her to

---

[10] While it was always Sage Dental's plan to have Dr. Ma replace Dr. Daneshpajouh, Dr. Ma was initially introduced to Dr. Daneshpajouh as the new office manager. [ECF No. 64-1 at 5 ¶ 32.]

the Parkland office, which was accepted. [*Id.* at 4 ¶ 18; *id.* at 15.] During the conversation, Mr. Sayler asked why Sage Dental "changed he [sic] plan to terminate Plaintiff's employment and offer a transfer instead." [*Id.* at 4 ¶ 19; *id.* at 15.] Specifically, he asked whether "we cannot or don't want to just terminate [Dr.] Danesh[pajouh] any more?" [*Id.* at 15.] Dr. Montilla responded that Dr. Daneshpajouh "informed me yesterday that she is pregnant." [*Id.* at 4 ¶ 19; *id.* at 15.] While Dr. Montilla's response does not precisely answer Mr. Sayler's question, the import is clear: ***Sage Dental reversed its decision to fire Dr. Daneshpajouh, decided not to fire her, and opted to transfer her instead***.

### Following Sage Dental's Explicit Decision Not to Fire Dr. Daneshpajouh, Dr. Daneshpajouh Engages in Protected Activity.

Following Sage Dental's decision to continue employing Dr. Daneshpajouh, there is no evidence in the record of new interpersonal issues between Dr. Daneshpajouh and Sage Dental's staff and/or patients. Nor is there any evidence of a change in Dr. Daneshpajouh's performance. There is, however, evidence of Dr Daneshpajouh engaging in protected activity.

First, on October 23, 2017, Dr. Daneshpajouh reported to Dr. Montilla that Sage Dental's office manager, Simin Kermani,[11] was removing patient information

---

[11] Dr. Daneshpajouh and Ms. Kermani did not get along. Shortly after Ms. Kermani was hired in July 2017, she told Dr. Daneshpajouh she "better not get pregnant anytime soon" because "the office needs to keep making money." [ECF No. 97 at 18.] Unbeknownst to Ms. Kermani, Dr. Daneshpajouh was already

from Sage Dental's computer system in violation of the Health Insurance Portability and Accountability Act ("HIPAA"). [ECF No. 64-1 at 4 ¶ 27; ECF No. 64-13 at 2-5.]

Second, on October 27, 2017, Dr. Daneshpajouh underwent a routine ultrasound and learned she was in preterm labor requiring emergency surgery to save her unborn child. [ECF 58-1 at 14 (Transcript 46:1-2); ECF No. 64-1 at 5 ¶ 34; ECF No. 64-19 at 2.] The surgery occurred on October 30, 2017. [No. 64-1 at 5 ¶ 35.] On October 31, 2017, Dr. Daneshpajouh called Dr. Montilla and informed him that she was put on bedrest and would be out of the office for several days. [ECF No. 58-1 at 14 (Transcript 46:2-8); ECF No. 64-1 at 5 ¶ 36]. She also inquired about taking FMLA leave. [ECF No. 58-1 at 14 (Transcript 46:2-7); ECF No. 64-1 at 5 ¶ 36]. In response, Dr. Montilla asked whether she had taken any vacation, and when Dr. Daneshpajouh replied that she had not, Dr. Montilla told her she was not entitled to FMLA leave, and she could take vacation instead.[12] [ECF No. 58-1 at 14 (Transcript 46:2-47:22); ECF No. 64-1 at 5 ¶ 37].

pregnant. [ECF No. 97 at 17.]

[12] The District Court found that Dr. Daneshpajouh was "granted paid leave for the surgery." [ECF 114 at 10.] This is incorrect. While her leave was treated as vacation, and she was granted the time off, she was not paid for it. [ECF 58-1 at 14 (Transcript 47:9-22)]. Per the Sage Dental Employee Handbook, only non-clinical full time employees receive paid time off ("PTO"). [ECF No. 58-3 at 25.] As a dentist, Dr., Daneshpajouh is a clinical employee, and thus not subject to PTO. Her Employment Agreement confirms this, stating that she is "entitled to . . . unpaid vacation or personal time." [ECF No. 58-2 at 5, § 6.]

Accordingly, Dr. Montilla did not provide Dr. Daneshpajouh with any of the requested FMLA information.

Third, while Dr. Daneshpajouh was out recovering from her surgery, Sage Dental disclosed her private medical information. Specifically, Dr. Daneshpajouh's patients were told that Dr. Daneshpajouh was out of the office due to surgery and complications with her high-risk pregnancy. [ECF No. 64-1 at 7 ¶ 46.] Dr. Daneshpajouh complained of this disclosure to both Dr. Montilla and Dr. Mann. [*Id.*]

### Sage Dental's Decision to Transfer Dr. Daneshpajouh and Its Abrupt Decision to Terminate Her Instead.

On November 6, 2017, Dr. Daneshpajouh returned to work from her emergency surgery. [ECF No. 64-1 at 5 ¶ 37.] That same morning, Dr. Montilla visited Dr. Daneshpajouh's office and told Dr. Daneshpajouh that she was not meeting her numbers and that Sage Dental was transferring her to the Parkland, Florida office.[13] [ECF No. 58-1 at 8 (Transcript 21:2-18); ECF No. 64-1 at 5-6 ¶¶ 37-38.] This was the first time Sage Dental ever raised Dr. Daneshpajouh's "numbers" or her supposed failure to meet them. [ECF No. 64-1 at 6 ¶ 38.] Dr.

---

[13] The record is unclear when the official decision to transfer Dr. Daneshpajouh was made. At its earliest, the decision was made on October 18, 2017, when Dr. Montilla discussed transferring Dr. Daneshpajouh with Mr. Sayler, Mr. Garcia, Ms. Kantor, and Mr. Mann. [ECF No. 58-6 at 4 ¶¶ 18-19; *id.* at 15.] At its latest, the decision was made on November 6, 2017, when the transfer was conveyed to Dr. Daneshpajouh. [ECF No. 58-1 at 8 (Transcript 21:2-18); ECF No. 64-1 at 5-6 ¶¶ 37-38.]

Daneshpajouh was upset with the transfer, since the Parkland office was a smaller practice than the Pompano Beach office, and thus effectively a demotion, so she asked to be transferred to the Davie office instead, which was closer to her home. [ECF No. 58-1 at 8 (Transcript 21:2-22:11).] Dr. Montilla agreed the transfer was a demotion and denied her request to transfer to Davie instead of Parkland. [*Id.*]

That same day, Dr. Montilla summarized his meeting with Dr. Daneshpajouh in an email to his superiors. Specifically, Dr. Montilla wrote that "Dr. Danesh[pajouh] was told today that effective Monday 11/13 she will be transferred to the Parkland office. Obviously, she was not pleased about it but was told Sage has no contractual obligation to keep her at one specific office. My take is that once she has the baby she will be gone." [ECF No. 64-25 at 2.]

The next day, Dr. Daneshpajouh reinforced her position to Dr. Montilla that a transfer to the Parkland office was a demotion due to its smaller size, weaker financial performance, and overall lack of prestige. [ECF No. 58-1 at 11 (Transcript 36:2-15); ECF No. 64-23 at 2; ECF No. 64-24 at 2.] In response, Dr. Montilla told her that given her condition and high-risk pregnancy, the Parkland office would be "good" for her. [ECF No. 58-1 at 11 (Transcript 36:20-15).] Specifically, he stated that "based on your current condition, it's best if you go to a slower office that's a lot less stressful, so Parkland is a really good option for you." [*Id.* at 11 (Transcript 36:17-21).] Despite her unhappiness, Dr. Daneshpajouh

10

agreed to the transfer. [*Id.* at 8 (Transcript 22:16-20).][14] She also asked for a three-month income guarantee to compensate her for the likely decrease in business (and thus income) she would suffer by the move, and to take her dental assistant with her to the Parkland office. [*Id.* at 11 (Transcript 36:5-14).] Dr. Montilla said he would get back to her on those requests. [*Id.* at 11 (Transcript 36:21-23).]

Notwithstanding Dr. Daneshpajouh's acceptance of the transfer, on November 9, 2017, Dr. Montilla returned to Sage Dental's Pompano Beach office – this time with Mr. Mann in tow – and fired Dr. Daneshpajouh. [*Id.* at 11-12 (Transcript 36:25-37:1); ECF No. 64-4 at 2.] They informed her that her termination was due to her lack of profitability. [ECF No. 64-1 at 6 ¶ 43.] Neither Dr. Montilla, Mr. Mann, nor anyone else at Sage Dental explained to Dr. Daneshpajouh why they were rescinding her transfer to the Parkland office or what had changed between the decision to transfer her and the decision to fire her. [*Id.*] Once again, this was the first time Sage Dental had ever raised performance and/or profitability issues with Dr. Daneshpajouh. [*Id.* at 6 ¶¶ 38, 43.]

Per Dr. Daneshpajouh's Employment Agreement and termination letter, she remained at Sage Dental for 90 days to complete her cases and previously

---

[14] The record contains conflicting testimony over whether Dr. Daneshpajouh accepted the transfer. Dr. Daneshpajouh testified she accepted the transfer [ECF No. 58-1 at 8 (Transcript 22:16-20)] while Dr. Montilla testified she refused the transfer [ECF No. 58-5 at 14 (Transcript 51:20-52:1)]. Making all inferences in favor of Dr. Daneshpajouh, for purposes of summary judgment, and thus this appeal, the Court must assume Dr. Daneshpajouh accepted the transfer.

scheduled appointments, but was unable to see new patients. [ECF No. 61-1 at 6 ¶ 44; ECF No. 64-4 at 2.] Dr. Daneshpajouh's last day at Sage Dental was February 7, 2017. [ECF No. 61-1 at 6 ¶ 45.]

**Dr. Daneshpajouh Initiates This Lawsuit.**

Dr. Daneshpajouh filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") on September 12, 2018. [ECF No. 58-15.] The EEOC found there was reasonable cause of discrimination.

Accordingly, on October 30, 2019, she filed the instant lawsuit. [ECF No. 1.] In her amended complaint, Dr. Daneshpajouh alleges five separate claims against Sage Dental: (1) Pregnancy Discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* (as amended, "Title VII"), and the Florida Civil Rights Act, Fla. Stat. Ch. 760 (the "FCRA"), stemming from her termination (Count I); Retaliation under Title VII and the FCRA for her complaints about being transferred and demoted due to her pregnancy (Count II); Interference with her Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), rights by refusing to provide her with information regarding the FMLA and by disclosing her personal and private medical information (Count III); Retaliation under the FMLA for seeking FMLA leave (Count IV); and Retaliation under the Florida Whistle-Blower's Act, Fla. Stat. § 448.102 (the "FWA"), for reporting Ms. Kermani's HIPAA violations (Count V). [ECF No. 20.]

On August 18, 2021, the District Court granted Sage Dental's motion for summary judgment [ECF No. 114] and entered final judgment on all counts [ECF No. 115]. For Counts I, II, IV, and V, the District Court held that Dr. Daneshpajouh could not meet her burden because Sage Dental had already begun contemplating her termination prior to her engaging in any protected activity. [ECF No. 114 at 18-30, 36-38.] For Count III, the District Court held that, even assuming there was FMLA interference, Dr. Daneshpajouh could not show prejudice to sustain her interference claim. [ECF No. 114 at 34-36.] On September 16, 2021, Dr. Daneshpajouh filed her notice of appeal. [ECF No. 116.] Specifically, Dr. Daneshpajouh appeals the grant of summary judgment on Counts I, II, IV, and V, and the final judgment entered related to those counts.

### **Standard of Review.**

This Court reviews the district court's grant of summary judgment *de novo*. *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1203 (11th Cir. 2001). Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if it could lead a reasonable jury to return a verdict in favor of the

nonmoving party. *Scott v. Harris*, 550 U.S. 372, 280 (2007).

In evaluating a summary judgment motion, all facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Strickland*, 239 F.3d at 1203. "[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment." *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013). To that end, because employment discrimination cases often turn on an employer's motivation and intent, "granting of summary judgment is especially questionable" in an employment discrimination case. *Hayden v. First Nat'l Bank of Mt. Pleasant*, 595 F.2d 994, 997 (5th Cir. 1979).

## SUMMARY OF THE ARGUMENT

This appeal centers on whether an employer's initial decision to terminate an employee that is later rescinded precludes a discrimination and/or retaliation claim where the employee engages in protected activity after the rescinded decision, and if such a claim is not precluded, how much weight should be given to the employer's initial rescinded decision to terminate. Here, the District Court granted Sage Dental's summary judgment motion, holding that once an employer even contemplates firing an employee, whether the employee is actually terminated or not, nothing else matters, and a claim for discrimination and/or retaliation must fail as a matter of law. There is no basis for this strict, bright-line rule. The District Court's failure to take all facts into consideration, especially those occurring after the decision to terminate Dr. Daneshpajouh was rescinded, was error, and thus this Court should reverse.

Here, it is undisputed that on October 17, 2017, Sage Dental intended to fire Dr. Daneshpajouh for alleged performance and interpersonal issues. It is also undisputed that on October 18, 2017, Sage Dental explicitly reversed that decision and decided not to fire her – instead opting to demote her through a transfer to a less desirable office. Following this decision, Dr. Daneshpajouh engaged in various protected activity, and twenty-three days later, on November 9, 2017, Sage Dental abruptly reversed course, and terminated Dr. Daneshpajouh's employment with

15

Sage Dental. Sage Dental justified this new termination decision on profitability and meeting "numbers" similar to its initial October decision. According to the District Court, because this decision was essentially the same rationale as its October decision, everything that happened between October 17 and November 9, 2017, was irrelevant. This was error.

First, these additional facts create a convincing mosaic of pregnancy discrimination. Sage Dental's office manager warned Dr. Daneshpajouh "not [to] get pregnant anytime soon." Dr. Montilla, Dr. Daneshpajouh's supervisor, suggested Dr. Daneshpajouh work in a "less stressful" environment due to her "condition," *i.e.*, her high-risk pregnancy. He also stated that "once she ha[d] the baby she w[ould] be gone." And less than one-month after revealing her pregnancy to Sage Dental, this came to fruition because Sage Dental fired Dr. Daneshpajouh.

Sage Dental's justification for its termination is pretextual. It relied on the same evidence that Sage Dental used in making the initial decision to fire her in October. Despite those reasons, the October decision to terminate Dr. Daneshpajouh was rescinded, and there were no new performance or interpersonal issues that occurred after that decision. Casting additional doubt on Sage Dental's rationale, Sage Dental cherry picked the metrics it relied on in terminating Dr. Daneshpajouh. Sage Dental claimed to base the decision on her productivity and failure to meet her numbers, even though Dr. Daneshpajouh was one of Sage

Dental's highest revenue producers. Taking all of this together, a reasonable jury could infer that Sage Dental's rationale for firing Dr. Daneshpajouh in November 2017 was pretextual, and the true reason was pregnancy discrimination.

Second, the events between October 17, 2017, and November 9, 2017, also satisfy the *McDonnell Douglas* framework for establishing pregnancy retaliation. Sage Dental encouraged Dr. Daneshpajouh to accept a demotion because it would be a "less stressful" environment for her high-risk pregnancy. When Dr. Daneshpajouh complained about this clear demotion and adverse employment action, she was fired two days later. The short temporal proximity is enough to establish a *prima facie* case of causation and retaliation. And as already discussed, the evidence is more than sufficient to create a question of material fact regarding whether Sage Dental's performance-based rationale for firing Dr. Daneshpajouh was pretextual.

Third, these events also satisfy the *McDonnell Douglas* framework for establishing an FMLA retaliation claim. Due to her high-risk pregnancy, Dr. Daneshpajouh required emergency surgery, necessitating a brief leave of absence to recover. When she inquired about FMLA leave, Dr. Daneshpajouh was told she was not entitled to FMLA leave because she could take vacation instead. Dr. Daneshpajouh returned from this "vacation" on November 6, 2017, and was fired three days later. Like with her pregnancy retaliation claim, the brief proximity

17

between Dr. Daneshpajouh's leave and her termination satisfies her burden to show a *prima facie* case of retaliation. And the evidence remains adequate to create a question of material fact regarding whether Sage Dental's proffered reason for firing Dr. Daneshpajouh was pretextual.

Finally, for the same reasons, there is enough evidence in the record for a jury to determine that Sage Dental's termination of Dr. Daneshpajouh on November 9, 2017, was pretextual, and the true reason was retaliation for objecting to Sage Dental's HIPAA violations.

At the end of the day, the District Court erred by effectively considering the record closed on October 17, 2017, when Sage Dental initially decided to terminate Dr. Daneshpajouh's employment. But given the events of October 18, 2017, through November 9, 2017 – whereby Sage Dental explicitly reversed its decision to fire Dr. Daneshpajouh in lieu of a transfer and demotion and then abruptly, and unjustifiably, reversed course again and fired her – a jury could reasonably infer improper motives. Therefore there exist genuine issues of fact material to the claims alleged, and summary judgment in Sage Dental's favor was not – and is not – appropriate. The Court should thus reverse the District Court's decision that disposed of Dr. Daneshpajouh's claims.

**ARGUMENT**

**I.    The District Court Erred in Granting Sage Dental Summary Judgment on Dr. Daneshpajouh's Pregnancy Discrimination Claims.**

Title VII prohibits employment discrimination on the basis of sex. 42 U.S.C. § 2000e-2(a); *Holland v. Gee*, 677 F.3d 1047, 1054 (11th Cir. 2012). The Pregnancy Discrimination Act amended Title VII to include discrimination "on the basis of pregnancy, childbirth or related medical conditions." 42 U.S.C. § 2000e(k); *Holland*, 677 F.3d at 1054. "The analysis for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits." *Holland*, 677 F.3d at 1054-55 (internal quotation marks omitted). Claims under the Florida Civil Rights Act are similarly guided by a Title VII analysis. *Id.* at 1054 n.1.

Pursuant to Title VII, Dr. Daneshpajouh "may prevail on a claim by showing that her pregnancy 'was a motivating factor' for" her termination. *Id.* at 1055 (quoting 42 U.S.C. § 2000e-2(m)). She may prove this through either direct or circumstantial evidence. *Id.* Where, like here, the evidence is circumstantial, Dr. Daneshpajouh must satisfy either the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or present "'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination.'" *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th

19

Cir. 2011)). "A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Id.* (internal quotation marks and citation omitted); *see also Johnson v. Airbus Def. & Space Inc.*, 858 F. App'x 304, at *6 (11th Cir. 2011) (explaining that a convincing mosaic is "circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker"). The existence of a convincing mosaic will allow a plaintiff to "always survive summary judgment." *See Lewis*, 934 F.3d at 1328.

Here, Dr. Daneshpajouh has presented a convincing mosaic of pregnancy discrimination. First, multiple employees made disparaging comments about pregnancy. Ms. Kermani warned Dr. Daneshpajouh "not [to] get pregnant anytime soon" because the office "needs to keep making money." [ECF No. 97 at 18.] Dr. Montilla suggested Dr. Daneshpajouh work in a "less stressful" environment due to her "condition," *i.e.*, her pregnancy. [ECF No. 58-1 at 11 (Transcript 36:17-21).] He also stated that he expected "that once she has the baby she will be gone." [ECF No. 64-25 at 2.] These statements can be inferred to suggest that Sage Dental discriminated against pregnant women. *See, e.g.*, *Ross v. Rhodes Furniture, Inc.* 146 F.3d 1286, 1291 (11th Cir. 1998) (acknowledging that stray remarks by non-

20

decisionmakers can constitute "circumstantial evidence to support an inference of discrimination").

Second, Dr. Daneshpajouh was fired less than one month after revealing her pregnancy to Sage Dental. [ECF No. 58-6 at 3 ¶ 16; ECF No. 58-1 at 11 (Transcript 36:25-37:1); ECF No. 64-4 at 2.] Such a short temporal proximity between revealing a pregnancy and being terminated has been held to be circumstantial evidence of discrimination. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999). This is especially true here when Sage Dental was "aware of" Dr. Daneshpajouh's pregnancy. *See Id.*

Third, there is no evidence in the record of non-pregnant employees being transferred and/or terminated for similar performance-based reasons. Indeed, other than to justify the initial decision to terminate Dr. Daneshpajouh, Sage Dental does not use the burn rate and case acceptance metrics in employment decisions because other metrics "more accurately" measure employee performance. [ECF No. 58-7 at 15 (Transcript 53:13-15, 54:10-20, 55:25-56:9).]

Fourth, there is evidence that Sage Dental's stated reasons for firing Dr. Daneshpajouh were pretextual. Pretext exists where there is "sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered reasons were not what actually motivated its conduct." *Lewis*, 934 F.3d at 1186. Sage Dental argues that it

21

terminated Dr. Daneshpajouh due to interpersonal and performance issues. [ECF No. 58-6 at 3 ¶¶ 8-10; ECF No. 58-7 at 18-19 (Transcript 65:13-71:22); ECF No. 58-11 at 5-7.] The documented interpersonal issues, however, occurred ***two years prior to her termination***. [ECF No. 58-7 at 18-19 (Transcript 65:13-71:22); ECF No. 58-9; ECF No. 8-10.] As for her performance issues, it appears that Sage Dental cherry-picked which metrics it considered. Sage Dental claims to have relied on burn rate, retention rate, and treatment acceptance rate, but ignored other metrics in which Dr. Daneshpajouh excelled – such as production rate and revenue generation.[15] [ECF No. 58-6 at 2-3 ¶¶ 6-7; ECF No. 58-11 at 5-7; ECF No. 101-1 (filed under seal) at 2-3.] Moreover, these metrics were not the reasons conveyed to Dr. Daneshpajouh in November 2017. Rather, she was told she was being transferred, and then fired, for issues related to her "profitability" and failure to hit her "numbers." [ECF No. 64-1 at 6 ¶¶ 38, 43.] While an employer may certainly rely on whatever metrics it wishes in making employment decisions, *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266-67 (11th Cir. 2010), that does not prevent a jury from looking at the full picture to determine whether the employer's rationale lacks credence. *See, e.g.*, *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (courts evaluate all evidence in determining whether genuine

---

[15] As noted above, Sage Dental does not even use the burn rate and case acceptance metrics anymore because other metrics "more accurately" measure employee performance. [ECF No. 58-7 at 15 (Transcript 53:13-15, 54:10-20, 55:25-56:9).]

issues of material fact exist regarding pretext); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 921 (11th Cir. 1993) (same).

Indeed, Sage Dental's stated rationale is hard to reconcile with the timeline of events. Sage Dental decided to terminate Dr. Daneshpajouh on October 17, 2017, allegedly based on her past performance and interpersonal issues. [ECF No. 58-6 at 3 ¶¶ 8-10, 14-15; *id.* at 9, 12-13; ECF No. 58-7 at 18-19 (Transcript 65:13-71:22).] On October 18, 2017, however, Sage Dental ***reversed that decision*** and decided to retain, transfer, and demote Dr. Daneshpajouh. [ECF No. 58-6 at 4 ¶¶ 17-19; *id.* at 15.] There is no record evidence of additional interpersonal or performance issues between October 18, 2017, and November 9, 2017, to justify Sage Dental's decision to renege on the transfer and decide to once again terminate her. And there certainly is no evidence that Dr. Daneshpajouh was not profitable; to the contrary, she was one of the highest revenue generators for Sage Dental. [ECF No. 101-1 (filed under seal) at 2-3.] The only evidence in the record between October 18, 2017, and November 9, 2017, is of Dr. Daneshpajouh engaging in protected activity, such as informing Sage Dental she is pregnant and needing to take time off due to emergency surgery related to pregnancy complications. [ECF 58-1 at 14 (Transcript 46:1-8); ECF No. 64-1 at 5 ¶¶ 34, 36; ECF No. 64-19 at 2.] This chronology would allow a jury to further case doubt on Sage Dental's proffered rationale for Dr. Daneshpajouh's termination. *See Hairston*, 9 F.3d at

23

921 (considering the timing of events in reversing grant of summary judgment).

The District Court recognized this evidence yet essentially held it to be irrelevant because Sage Dental had previously decided to terminate Dr. Daneshpajouh – even though that decision had been rescinded. In support, it relied upon *Mohammed v. Jacksonville Hospitalists, P.A.*, 712 F. App'x 872 (11th Cir. 2017), *Huddleston v. Bowling Green Inn of Pensacola, LLC*, No. 3:19-cv-1545, 2020 WL 7296511 (N.D. Fla. Nov. 10, 2020), and *Key v. Central Georgia Kidney Specialists, P.C.*, No. 19-00253, 2020 WL 7053293 (M.D. Ga. Oct. 28. 2020). But all three cases are distinguishable. In *Mohammed*, the employer "had concerns about [the employee's] performance from 'very early on'" and terminated the employee because her performance issues continued after she disclosed her pregnancy.[16] *See Mohammed*, 712 F. App'x at 876. In *Huddleston*, there were complaints about the employee's behavior and lack of management skills both before and after employee disclosed her pregnancy. *See Huddleston*, 2020 WL 7296511, at *2-*3. And in *Key*, the employer was "considering firing [the employee] well before it knew she was pregnant" and eventually fired her after learning she was pregnant because she "continu[ed her] pattern of poor attendance" and "provided an additional and independent reason" for termination by "show[ing] up to work the unscheduled shift and then call[ing] out of work on

---

[16] The employer also decided to eliminate the employee's position – another factor not at issue here. *See Mohammed*, 712 F. App'x at 876.

short notice the following day." *Key*, 2020 WL 7053293, at \*10.

Thus, in all three cases, the employer (i) had been considering terminating the employee but had not yet officially made or acted on the decision at the time the employee revealed her pregnancy and (ii) ultimately fired the employee due to ***additional*** behavior supporting the decision that occurred ***after*** the employee disclosed her pregnancy. Here, by contrast, Sage Dental had done more than "consider" firing Dr. Daneshpajouh; it had settled on firing her and then explicitly reversed that decision and decided instead ***not to fire*** her. [ECF No. 58-6 at 3, 4 ¶¶ 8-10, 14-15, 17-19; *id.* at 9, 12-13, 15; ECF No. 58-7 at 18-19 (Transcript 65:13-71:22).] Moreover, unlike in *Mohammed*, *Huddleston*, and *Key*, there is no record evidence of additional interpersonal or performance issues after Dr. Daneshpajouh disclosed her pregnancy. Given Sage Dental's change in position, what happened in the interim – between the time Sage Dental decided not to terminate Dr. Daneshpajouh and the time it ultimately did fire her – is highly relevant. Indeed, this is the only time frame that matters to determine Sage Dental's motive, and thus pretext. And as already explained above, there is circumstantial evidence of discrimination during this period. [ECF 58-1 at 14 (Transcript 46:1-8); ECF No. 64-1 at 5 ¶¶ 34, 36; ECF No. 64-19 at 2.]

Dr. Daneshpajouh thus presented the District Court with a convincing mosaic of pregnancy discrimination: suspicious timing related to her firing,

disparaging comments related to her pregnancy, and sufficient doubt as to what truly motivated Sage Dental's decision to fire her. With all of this evidence, a jury could infer intentional discrimination, and thus summary judgment was improperly granted to Sage Dental. *See Lewis*, 934 F.3d at 1328.

## II.    The District Court Erred in Granting Sage Dental Summary Judgment on Dr. Daneshpajouh's Pregnancy Retaliation Claims.

In addition to prohibiting discrimination on the basis of sex, Title VII and the FRCA prohibit an employer from retaliating against an employee for complaining about sex discrimination, including pregnancy. 42 U.S.C. § 2000e-3(a); *Tebo v. City of DeBary, Florida*, 784 F. App'x 727, 729 n.3 (11th Cir. 2019). A claim for retaliation under Title VII follows the same *McDonnell Douglas* burden-shifting analysis that applies to Title VII discrimination cases. *Id.* at 729 & n.3.

Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of retaliation by showing that (1) she was engaged in statutorily protected conduct, *i.e.*, conduct protected by Title VII; (2) she suffered an adverse employment action; and (3) there is some causal relationship between the two events. *Tebo*, 784 F. App'x at 731. Once a *prima facie* case is established, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse action. *Id.* Assuming the employer is able to do so, the burden shifts back to the plaintiff to establish that the employer's explanation is a pretext for retaliation. *Id.*

26

### A.    Dr. Daneshpajouh Established a *Prima Facie* Case of Retaliation.

Here, the District Court erred when it held that Dr. Daneshpajouh failed to establish her *prima facie* case. It is undisputed that the decision to transfer Dr. Daneshpajouh from the Pompano Beach office to the Parkland office amounted to a demotion, and that Dr. Daneshpajouh complained about the demotion. [ECF No. 58-1 at 8 (Transcript 21:2-22:11); *id.* at 11 (Transcript 36:2-15); ECF No. 64-23 at 2; ECF No. 64-24 at 2.] It is also undisputed that Dr. Montilla told Dr. Daneshpajouh that the transfer would be "a lot less stressful" and a "really good option" for her due to her "current condition," *i.e.*, her high-risk pregnancy. [ECF No. 58-1 at 11 (Transcript 36:17-21).] Complaining about the transfer, which Dr. Daneshpajouh was encouraged to take due to her "condition," therefore constitutes statutorily protected conduct. *See* 42 U.S.C. § 2000e-3(a) (defining statutorily protected conduct to include "oppos[ing] any practice" made unlawful under Title VII, such as pregnancy discrimination). And being terminated from her position certainly qualifies as an "adverse employment action." *See, e.g.*, *Farley*, 197 F.3d at 1337. Despite these two events occurring a mere two days apart, the District Court determined there was no causal connection – and thus no *prima facie* case – because Sage Dental was already contemplating Dr. Daneshpajouh's termination. [ECF 114 at 29-30.]

The District Court, however, required too much of Dr. Daneshpajouh to

establish the causation prong. "This court has interpreted the causal link requirement broadly; a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Equal Employment Opportunity Comm'n v. Reichhold Chems., Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993). Courts have repeatedly acknowledged that "close temporal proximity" is sufficient to satisfy the causation element, especially when the employer is aware of the protected conduct. *See, e.g.*, *Tebo*, 784 F. App'x at 731; *Thomas v. Cooper Lightning, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007); *Farley*, 197 F.3d at 1337; *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999). And when the temporal proximity is "very close," temporal proximity alone is sufficient to establish causation. *Thomas*, 506 F.3d at 1364. A two-day interval between a protected and an adverse discrimination action is certainly "very close."

But even if the District Court were correct that the two-day interval between her complaining of the demotion and being fired was not on its own sufficient to establish causation because Sage Dental had been contemplating firing Dr. Daneshpajouh, *see, e.g.*, *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006), that does not mean Dr. Daneshpajouh could not establish a *prima facie* case of causation. *See Alvarez*, 610 F.3d at 1268 (finding causation even though "plans were underway to fire [employee] even if she had not complained"); *Key*, 2020 WL 7053293, at *7 ("[T]emporal proximity arguments fall short when legitimate,

nondiscriminatory reasons for the termination **remain undisputed**." (emphasis added)).

Here, Sage Dental decided to fire Dr. Daneshpajouh in October 2017 and then explicitly reversed that decision the next day, opting instead to, at most, demote her through a transfer to the "less stressful" and less profitable Parkland office which would supposedly be better for her given her pregnancy. [ECF No. 58-1 at 11 (Transcript 36:17-21).] It was only after Dr. Daneshpajouh complained about this demotion (which she begrudgingly accepted) that Sage Dental abruptly withdrew the transfer and fired her two days later. [*Id.* at 8 (Transcript 22:16-20); *id.* at 11-12 (Transcript 36:25-37:1); ECF No. 64-4 at 2.] There is no evidence in the record of a change in Dr. Daneshpajouh's job performance, an increased lack of productivity, or an increased "failure to meet numbers" between the date the transfer was conveyed to her and the date she was fired to justify the change in Sage Dental's change in position and revert back to its October 17, 2017, posture. Given the lack of evidence of any change in Dr. Daneshpajouh's performance – let along a justifiably negative change – the short temporal proximity of two days, along with Dr. Montilla's disparaging comments about her abilities due to her pregnancy, is enough to satisfy the broadly interpreted causation prong.[17] *See*

---

[17] Indeed, this case is very different than *Drago* or any of the other cases cited by the District Court. This is not a situation where Sage Dental had considered terminating Dr. Daneshpajouh but had just not gotten around to it yet. *Cf. Saffold v.*

*Alvarez*, 610 F.3d at 1268; *Reichhold*, 988 F.2d at 1571-72.

Dr. Daneshpajouh has therefore satisfied her burden of establishing a *prima facie* case under *McDonnell Douglas*.

### B.    Dr. Daneshpajouh Presented Sufficient Evidence of Pretext.

Having established a *prima facie* case, Dr. Daneshpajouh must also present evidence to cast "sufficient doubt" on Sage Dental's proffered reason for terminating her. Sage Dental states it terminated Dr. Daneshpajouh due to her poor job performance, poor interpersonal skills, and lack of profitability. But the record raises doubt as to whether this is the case.

As detailed above, *see* Part I, *supra*, Sage Dental may have decided to terminate Dr. Daneshpajouh on October 17, 2017, for these performance-related reasons, but it reversed that decision on October 18, 2017. [ECF No. 58-6 at 3, 4 ¶¶ 8-10, 14-15, 17-19; *id.* at 9, 12-13, 15; ECF No. 58-7 at 18-19 (Transcript 65:13-71:22).] It instead decided to demote her through a transfer to the Parkland office. [ECF No. 58-6 at 4 ¶¶ 18-19; *id.* at 15; ECF No. 58-1 at 8 (Transcript 21:2-18); ECF No. 64-1 at 5-6 ¶¶ 37-38.] Sage Dental conveyed the transfer decision to Dr. Daneshpajouh on November 6, 2017, she complained about it on November 7,

---

*Special Counsel, Inc.*, 147 F. App'x 949, 951 (11th Cir. 2005) (failing to find a causal connection where the "supervisor simply followed through with the 'previously contemplated, though not yet definitively determined' plan to terminate" (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)) (emphasis added)). Rather, this is a case where the decision was made and then rescinded.

2017, and on November 9, 2017, Sage Dental rescinded the transfer and instead fired her. [ECF No. 58-1 at 8, 11-12 (Transcript 21:2-18, 36:25-37:1); ECF No. 64-1 at 5-6 ¶¶ 37-38; ECF No. 64-4 at 2.] The relevant time frame, therefore, is not what happened before the first rescinded decision to fire Dr. Daneshpajouh in October 2017, but rather the time frame between the decision to transfer her and the decision to revoke the transfer and instead fire her, *i.e.*, from November 6, 2017, to November 9, 2017.

There is no record evidence to suggest Dr. Daneshpajouh's performance or interpersonal relations further deteriorated during this period; nor is there any evidence that Dr. Daneshpajouh was now less profitable. To the contrary, the record evidence is that Dr. Daneshpajouh remained one of the highest revenue generators for Sage Dental in 2017. [ECF No. 101-1 (filed under seal) at 2-3.] Instead, the ***only thing*** that changed was Dr. Montilla trying to convince Dr. Daneshpajouh that the transfer was a "really good option" for her in her "current condition" due to the Parkland office being "less stressful" and Dr. Daneshpajouh complaining about the demotion on November 7. [ECF No. 58-1 at 8, 11 (Transcript 21:2-22:11, 36:2-21); ECF No. 64-23 at 2; ECF No. 64-24 at 2.] A jury could reasonably infer that "but for" Dr. Daneshpajouh's complaint on November 7, Sage Dental would have proceeded with its plan to transfer Dr. Daneshpajouh to the Parkland office. *Cf. Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121,

31

1136 (11th Cir. 2020) (explaining that to show pretext, a plaintiff must provide evidence "from which one could reasonably conclude that but for her alleged protected act, her employer would not have fired her"). She has thus presented evidence that Sage Dental's proffered reason is not credible, and thus a pretext for retaliation.

*****

Dr. Daneshpajouh has pled a *prima facie* case of retaliation and presented record evidence that casts serious doubt on Sage Dental's proffered reason for terminating her. She has satisfied the *McDonnell Douglas* burden shifting test, and therefore the District Court erred in granting Sage Dental summary judgment.

## III.   The District Court Erred in Granting Sage Dental Summary Judgment on Dr. Daneshpajouh's FMLA Retaliation Claim.

To establish an FMLA retaliation claim, Dr. Daneshpajouh "must demonstrate that [Sage Dental] intentionally discriminated against [her] in the form of an adverse employment action for having exercised an FMLA right." *Strickland*, 239 F.3d at 1207. In analyzing such a claim, the Court applies the same *McDonnell Douglas* framework used to evaluate Title VII discrimination claims. *Id.*

Here, Sage Dental terminated Dr. Daneshpajouh's employment a mere three days after she returned to work following emergency surgery to save her unborn child and shortly after she requested FMLA leave. [ECF No. 64-1 at 5 ¶ 37; ECF No. 58-1 at 11-12 (Transcript 36:25-37:1); ECF No. 64-4 at 2.] There is no debate

that Dr. Daneshpajouh's leave was protected conduct and that her termination was an adverse employment event. Rather, the District Court granted summary judgment to Sage Dental for the same reasons it granted summary judgment on the Title VII/FCRA retaliation claims: Dr. Daneshpajouh supposedly failed to satisfy both her causation and pretext burdens under *McDonnell Douglas*. [ECF 114 at 36-37.]

Like with the Title VII/FCRA retaliation claims, though, the District Court erred. Dr. Daneshpajouh began her protected leave on October 31, 2017, and returned on November 6, 2017. [ECF No. 58-1 at 14 (Transcript 46:2-8); ECF No. 64-1 at 5 ¶¶ 36-37.] She was terminated three days later. [ECF No. 58-1 at 11-12 (Transcript 36:25-37:1); ECF No. 64-4 at 2.] This temporal proximity is sufficient to satisfy the causation prong of the *McDonnell Douglas prima facie* case requirement. *See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection."); *see* Part II(A), *supra*.

Moreover, Sage Dental's decision to fire Dr. Daneshpajouh in October – weeks before she took her leave – does not end the pretext analysis because Sage

Dental *also decided to reverse that decision and not fire her*.[18] [ECF No. 58-6 at 4 ¶¶ 17-19; *id.* at 15.] It was not until after Dr. Daneshpajouh took leave that Dr. Montilla believed Dr. Daneshpajouh would be "gone" after she gave birth, and that Sage Dental abruptly decided to fire her. [ECF No. 64-25 at 2; ECF No. 58-1 at 11-12 (Transcript 36:25-37:1); ECF No. 64-4 at 2.] At the same time, there is no record evidence of additional performance issues, of additional interpersonal issues, or of a drop in profitability during this ten-day span (the time between Dr. Daneshpajouh first requesting FMLA leave and being fired) that would warrant Sage Dental's return to its pre-October 18 decision to terminate Dr. Daneshpajouh's employment. A jury could thus reasonably infer that Sage Dental's reliance on "numbers" and "profitability" to justify the November 9, 2017, action was pretextual, and the true reason for firing Dr. Daneshpajouh was Sage Dental's disapproval with Dr. Daneshpajouh taking leave to recover after complications with her pregnancy. *See Hulbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006) (reversing summary judgement on FMLA retaliation claim in part because there was a question of fact as to whether

---

[18] Thus, this case is once again distinguishable from the cases relied upon by the District Court. In *Pecora v. ADP, LLC*, 232 F. Supp. 3d 1213, 1222 (M.D. Fla. 2017), the employer had already decided to take the adverse employment action before the employee engaged in FMLA protected activity. In *Salem v. City of Port St. Lucie*, 788 F. App'x 692, 696 (11th Cir. 2019), meanwhile, the employer had already begun the process of terminating the employee by informing him of certain requirements that had to be met to retain his job. In neither case had the employer contemplated – but decided against – taking adverse action.

"the decision to terminate him was itself made before the request for leave, or that termination would have occurred regardless of the request"); *see also* Parts I and II(B), *supra*.

Dr. Daneshpajouh has met her burden under the *McDonnell Douglas* framework to establish her FMLA retaliation claim. Summary judgment, therefore, was – and is – improper.

## IV.    The District Court Erred in Granting Sage Dental Summary Judgment on Dr. Daneshpajouh's FWA Claim.

The FWA provides that "[a]n employer may not take any retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of law, rule, or regulation." Fla. Stat. § 448.102. Dr. Daneshpajouh alleged in Count V of her amended complaint that Sage Dental violated the FWA by terminating her for complaining to Dr. Montilla about HIPAA violations on October 23, 2017. [ECF No. 114 at 38; ECF No. 64-1 at 4 ¶ 27; ECF No. 64-13 at 2-5.]

"A retaliation claim under the FWA is guided by the same analysis as a Title VII federal claim." *Berber v. Wells Fargo, NA.*, 798 F. App'x 476, 478 (11th Cir. 2020). The District Court held that Dr. Daneshpajouh's FWA claim failed for the same reasons her Title VII and FMLA claims failed – that Sage Dental had already "contemplated terminating" Dr. Daneshpajouh. [ECF No. 114 at 38.] However, as

detailed above, the undisputed evidence shows that Sage Dental also reversed that decision and chose not to fire Dr. Daneshpajouh. [ECF No. 58-6 at 4 ¶¶ 17-19; *id.* at 15.] Thus, for the same reasons the District Court incorrectly granted summary judgment on Dr. Daneshpajouh's Title VII claims, summary judgment on Dr. Daneshpajouh's FWA claim is improper. *See* Parts I, II, and III, *supra*.

## CONCLUSION

Based on the foregoing, the Appellant, Sara Daneshpajouh, respectfully requests the Court enter an order reversing the District Court's summary judgment order and entry of final judgment on her Title VII and FCRA pregnancy discrimination claims (Count I), her Title VII and FCRA pregnancy retaliation claims (Count II), her FMLA retaliation claim (Count IV), and her FWA claim (Count V), and grant such other relief as the Court deems just, fair, and equitable.

Dated: November 24, 2021

Respectfully submitted,

*/s/ Darren M. Goldman*
Darren M. Goldman, Esq.
Florida Bar Number 88638
Becker & Poliakoff, P.A.
1 East Broward Blvd., Ste. 1800
Fort Lauderdale, FL 33301
Phone:  (954) 364-6037
Fax:     (954) 985-4176

Jamie B. Dokovna, Esq.
Florida Bar Number 592722

Becker & Poliakoff, P.A.
625 N. Flagler Drive, 7th Floor
West Palm Beach, Florida 33401
Phone:  (561) 655-5444
Fax:      (561) 832-8987

*Attorneys for Appellant Sara*
*Daneshpajouh*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

I certify that this document complies with Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,541 words.

I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14 point font Times New Roman.

By: */s/ Darren M. Goldman*
               Darren M. Goldman, Esq.
               Florida Bar Number 88638

**CERTIFICATE OF SERVICE**

I certify that on November 24, 2021, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served on this day on all counsel of record via the Court's CM/ECT Notice of Docket Activity.

By: */s/ Darren M. Goldman*
                 Darren M. Goldman, Esq.
                 Florida Bar Number 88638